JOHN H. TAYLOR v. ROSA VOLK, EXECUTRIX OF JACOB VOLK, DECEASED.

If any action against an executor or administrator be pending at the time of making an order to limit creditors, under the twenty-second section of the supplement to the Orphans Court act, approved March 17th, 1855, or be commenced after such order is made, no execution can issue upon a judgment therein for the plaintiff, until the expiration of ten months after the making of the order; and if within those ten months, the executor or administrator represents the estate to be insolvent, according to the twenty-fourth section of the same supplement, no such execution can issue thereafter.

On motion to vacate and set aside execution.

Argued at June Term, 1875, before Justices SCUDDER, KNAPP and DIXON.

For the motion, *James W. Vroom.*

Contra, *Besson.*

The opinion of the court was delivered by

DIXON, J.   Jacob Volk having died, his will was admitted to probate in Hudson county, and letters testamentary thereon granted to his widow, Rosa Volk, on August 15th, 1874. On the 5th day of the ensuing September, the usual order was made, pursuant to the twenty-second section of the supplement to the Orphans Court act, approved March 17th, 1855, that the executrix give public notice to the creditors of the decedent to bring in their claims, under oath, within nine months; and due notice of the order was, thereupon, published according to its terms.

On February 23d, 1875, an action of assumpsit was commenced in this court by John H. Taylor against the executrix, and on the 10th day of April following, judgment by

Taylor v. Volk, Executrix.

default was rendered therein for the plaintiff. A writ of fieri facias was immediately issued to the sheriff of Hudson county, who forthwith levied the same upon personal property of the decedent in the hands of the executrix.

On the 2d day of July, A. D. 1875, the executrix, by application, in writing, under oath, represented to the Orphans. Court of Hudson county, that the estate of the testator was insufficient to pay his debts, and that application is still pending. She now moves, in this court, to have the execution issued at the suit of Taylor set aside and vacated.

At common law, an execution and levy under these circumstances would have been, undoubtedly, valid. The plaintiff, by obtaining his judgment, would have acquired a priority over general creditors, and might, by execution upon it, have seized the testator's goods for its satisfaction; and, failing to find such goods, he would have been entitled to hold the executrix personally responsible for wasting the assets which the judgment by default would have conclusively established she once had, but which she did not produce to answer the plaintiff's demand. If the claim of the judgment creditor absorbed all of the property left by the testator after payment of debts having a legal right to higher preference, or so much of it that there remained not sufficient to pay the debts of other creditors less prompt in pursuing their remedies, those other creditors must have suffered—their debts would be unpaid.

Early, however, in the legislation of this state, a different rule was introduced. By an act passed June 13th, 1799, for the distribution of the estates of persons who die, not leaving sufficient property to pay all their just debts, it was enacted that the estate, real and personal, of such persons, should be distributed among their creditors, in proportion to the sums due to them respectively, except physicians' bills during the last sickness, funeral expenses and judgments obtained during the life of the decedent, which were to be preferred; and that in order to enable the executor, &c., to examine into the condition of the estate, and ascertain the amount and value

thereof, and the debts to be paid out of the same, no action should be brought against such executor, &c., within six months after the decease of the decedent, unless on a suggestion of fraud in the executor, &c., or for the discovery of assets, or for some preferred debt. This act declares the general purpose of the legislature, but fails to furnish to the executor any means of ascertaining the debts among which he was to distribute the insolvent estate, or to provide any method of distribution. The most expeditious means of discovery which the law afforded him, was the " act for the limitation of actions," passed February 7th, 1799, the fourteenth section of which authorized the Orphans Court to direct executors, &c., to give public notice to the creditors of the decedent to bring in their claims against the estate within such time as the court should limit, not exceeding two years, nor less than one year, and barred the claims of such creditors as failed to comply with the notice. These means, however, were quite inadequate, for if even the Orphans Court prescribed the shortest permissible time, one year, it did not compel creditors to present their claims with sufficient promptness to enable the representative to determine whether his estate was insolvent or not, before a single vigilant creditor could obtain a judgment, and so a preference that might exhaust all the assets. The remedial power of the Orphans Court was extended by " an act concerning the estates of persons who die insolvent," passed February 19th, 1819, by which the court was directed, on application of an executor, &c., to appoint a certain time, not less than six months, nor more than two years, within which all creditors should present their demands to the executor, &c., for settlement. This act also directs, that whenever the estate is likely to prove insolvent, it shall be the duty of the executor, &c., after the said limited time shall expire, to make settlement of the estate, and render a statement to the court of all the demands of creditors which may have been received; and, thereupon, the court is to direct distribution among the creditors, in proportion to their demands, which settlement shall be final and conclusive

against all persons, and such executor, &c., shall not be liable thereafter to prosecution for any claim against the estate, except in case of fraud or discovery of the property. The sixth section of the act further provides, that when any action may be pending against an executor, &c., during the progress of his settlement of the estate as aforesaid, the same may be proceeded in to final judgment, execution and sale of any of the estate of the decedent in the hands of the executor, &c., to be administered ; but the court shall have power in all cases, at their discretion, to stay execution, when to them the same may appear just and reasonable, for any time, not exceeding one year, after the expiration of the limited time for the final settlement of the estate ; but where the estate proves insolvent, and a ratable distribution is ordered as aforesaid, said judgment creditor shall only recover his ratable proportion.

These insolvency acts of 1799 and 1819 were both repealed by "an act concerning the estates of persons who die insolvent," passed June 12th, 1820, the first and second sections of which are a substantial re-enactment of the before mentioned act of 1799. The third section provides that when any executor, &c., shall, by application, in writing, represent to the Orphans Court, on oath, that the personal and real estate of the decedent is insufficient to pay the debts of the deceased, according to the best of his knowledge and belief, the court shall direct the executor, &c., to give public notice to the creditors to exhibit to such executor, &c., under oath, their claims against the estate, within such time as the court shall appoint, not exceeding eighteen months, nor less than six months. The fourth, fifth, sixth, seventh, eighth, ninth, and tenth sections of the act provide for ascertaining the amount of estate and debts, and distributing the assets among the creditors in proportion to the sums due to them. The eleventh section bars all creditors who fail to exhibit their claims within the time limited, from prosecuting or recovering their demands, unless the estate proves more than sufficient to pay the debts exhibited, or some other estate be discovered by the creditors in laches. The twelfth section enacts

that if any action shall be pending against the executor at the time of his making the application, as in the third section mentioned, or any action shall be brought against such executor, after the making of said application, the plaintiff in such action may proceed to final judgment; but no execution shall, in any case, issue after the making of said application; and the amount of such judgment, when recovered, shall be the sum on which the creditor shall receive his ratable proportion. This restraint of execution has been held to apply only to such suits as were pending at the time of making the application spoken of in the section, or commenced thereafter. *Howell's Adm'rs* v. *Potts' Adm'rs, Spencer* 1.

This statute is obnoxious to the same criticism as the previous legislation on this subject. It provides no means for enabling the executor to ascertain whether his estate is insolvent or not. He cannot, under it, compel creditors to exhibit their claims, before he is called upon to institute a comparison between their amount and that of the fund appointed to meet them.

The law remained in this imperfect state until the enactment of the supplement to the Orphans Court act, approved March 17th, 1855, which, in my judgment, remedied the defect. The twenty-second section of this statute empowers the Orphans Court, or surrogate, to order executors and administrators to give public notice to creditors of the decedent to bring in their claims, under oath, within nine months from the date of such order, and bars the claims of such creditors as fail so to do. And the twenty-fourth section provides that when such order shall be obtained, and notice given, the executor or administrator, if he shall, at the time of obtaining such order, or within ten months thereafter, by application, in writing, under oath, represent to the Orphans Court that the real and personal estate of the decedent is insufficient to pay the debts of the deceased, may take all the proceedings that may be authorized by the "act concerning the estates of persons who die insolvent," without proceeding as is required in the third section of that act. The effect of this statute of

1855 is, that the representative is allowed one month after all claims are presented to him, in which to ascertain whether the estate he has to administer is solvent or not. The order and notice which, under the act of 1799, were merely to limit creditors, and those which, under the third section of the act of 1820, were to require creditors to bring in their claims for a proportionate distribution of the insolvent estate, are under this of 1855, amálgamated. A single order and notice would perform the double office, and at the same time more completely effectuate the general purpose of the legislature in the disposition of the insufficient assets of the decedent. If, on the coming in of the debts, the estate appears to be solvent, the aid of this twenty-fourth section would not be invoked, and the order and notice under the twenty-second section, so far as they related to insolvency, would be abandoned; but if the assets proved inadequate, and were so represented to the court within the ten months, according to this twenty-fourth section, then the order and notice would remain and stand in the law as a substitute for the order and notice provided in the third section of the act of 1820, and there would follow upon the order and notice, under the statute of 1855, all the consequences which would have attended in the law upon the order and notice under the act of 1820. One of those consequences is, that no execution is to issue in any action commenced against the executor or administrator after such order is applied for. My conclusion upon the statutes of 1820 and 1855, therefore, is, that if any action against an executor or administrator be pending at the time of making an order to limit creditors under the later statute, or be commenced after such order is made, no execution can issue upon a judgment for the plaintiff in such action until the expiration of ten months after the making of the order; and if within those ten months, the executor or administrator represents the estate to be insolvent, according to the act of 1855, no such execution can issue thereafter.

In the case in hand, the suit against the executrix was commenced after the making of the order to limit creditors,

the execution was issued within ten months after the making of the order, and within the same ten months the executrix represented to the Orphans Court that the estate was insufficient to pay debts. The execution and levy must, therefore, be vacated, with costs.

The revision of 1874 makes some changes in the law touching this matter, but the facts of the present case require no examination of those changes.